UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNETTA MOORE,

        Plaintiff,

Case No. 1:05-CV-107

Hon. Hugh W. Brenneman, Jr.

vs.

DOLGENCORP, INC.,

        Defendant.

_____/

**OPINION**

This matter is now before the court on defendant's motion for summary judgment (docket no. 15). For the reasons stated below, defendant's motion is denied.

**I.    Introduction**

Plaintiff, Danetta Moore, is an African-American woman and former employee of defendant. Plaintiff was fired from her position as a store manager of the Dollar General Store in Benton Harbor, Michigan on or about February 11, 2003. She has filed a two-count complaint in this court. In Count I, plaintiff alleges that defendant violated the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2201 *et seq.* Presumably, plaintiff brings her action pursuant to M.C.L. § 37.2202(1)(a), which prohibits and employer from discriminating against "an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status."[1] In Count II, plaintiff alleges racial discrimination pursuant to the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.* ("Title VII"), which prohibits discrimination on the basis of race, color, religion, sex, or

---

[1] The complaint does not cite a particular section of ELCRA.

national origin in federal and private employment.  *See* 42 U.S.C. § 2000e, 2000e-2.[2]

## II. Legal standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## III. Discussion

At the motion hearing, plaintiff's counsel admitted that there was insufficient direct evidence of race discrimination.  Accordingly, plaintiff's claim will be evaluated as one involving indirect evidence of discrimination.

### A. The *McDonnell Douglas* framework

In Title VII cases involving indirect evidence of employment discrimination, the Sixth Circuit utilizes a burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*,

---

[2]  The complaint incorrectly identifies this statute as "40 USC 2000."

411 U.S. 792 (1973). *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). In cases in which there is no direct evidence of discrimination, Michigan has adopted the burden shifting analysis for indirect proof of discrimination as set forth in *McDonnell Douglas*. *See Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515 (2001). Accordingly, the court will utilize the *McDonnell Douglas* framework for analyzing both the federal and state claim.

To establish a *prima facie* case of discrimination, plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by a member of an unprotected class or treated differently from similarly situated members of the unprotected class. *McDonnell Douglas Corp*, 411 U.S. 792; *Hoskins*, 227 F.3d at 731; *Mitchell*, 964 F.2d at 582; *Alexander v. Local 496, Laborers' International Union*, 177 F.3d 394, 402-03 (6th Cir. 1999). Defendant contends that plaintiff has failed to establish the fourth prong of a *prima facie* case of race discrimination because she was replaced by an individual that was a member of a protected class and she presents no evidence that non-African-American store managers were treated differently.

### B. Plaintiff's newly asserted claims of sex and color discrimination

In her response, plaintiff raises additional claims of sex and color discrimination by contending that her replacement, Randy Young, was not a member of a protected class. Plaintiff's Response at 17-18. Specifically, plaintiff contends that defendants "chose to go outside the ranks of Black females" and replaced her with "a male of self-described mixed-race background, who was a member of a different protected class than [plaintiff]." *Id.* at 18.

In her affidavit, plaintiff states in pertinent part as follows:

3

> 1. I am an African-American woman. My skin color is dark, even within the range of other African Americans, and especially compared to persons of non-African-American heritage, including persons of mixed race.
>
> 2. I have seen the mixed race individual who replaced me as manager of the Benton Harbor store. Without question, his skin color is significantly lighter than mine.

Dannetta Moore Affidavit at ¶¶ 1- 2, attached to plaintiff's brief. Young is identified as a bi-racial individual, whose parents were African-American and Caucasian. Mark Ziegert Affidavit (1/30/06) at ¶ 19, attached to defendant's statement of undisputed facts  Henry Taylor Aff. at ¶ 2, attached to defendant's reply brief.

As an initial matter, plaintiff's complaint alleges that she is a member of a protected class identified as "African-American/Black," and that she was discharged because of her race. Compl. at ¶¶ 25-29. While plaintiff identifies herself as "an African-American woman," she does not allege that she was discharged because of her gender. Similarly, while plaintiff identifies herself as a member of a protected class of "African-American/Black," she does not allege that she was discharged because her skin is darker than other African-Americans or because her skin is darker than mixed-race individuals such as Young. Nor does she actually claim, except possibly by inference, that she does not have a mixed-race heritage herself.

Plaintiff's complaint is consistent with the Final Determination and right-to-sue letter issued by the Equal Employment Opportunity Commission (EEOC), which restricts her claim to race discrimination. According to plaintiff, the letter (which the court has not seen) states that:

> a. [Defendant] is an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII");
>
> b. The Charge was timely submitted;
>
> c. The Charging Party [i.e., plaintiff] alleged that she was

>> discharged because of her <u>race</u>, in violation of Title VII; and

> d. The evidence supports a finding of cause for the Charge.

Compl. at ¶ 23 (emphasis added).

Plaintiff's response, which asserts a prima facie case of discrimination based upon her replacement by a mixed-race male rather than a black female, appears to be a back-door attempt to amend the complaint to add claims of sex and color discrimination. Plaintiff's complaint is limited to a claim of race discrimination. She has not moved to amend the complaint to add claims of sex or color discrimination. Accordingly, the court will disregard her arguments regarding these additional claims of discrimination.

Furthermore, this court does not have subject matter jurisdiction over these additional discrimination claims because she has failed to administratively exhaust the claims as required under Title VII.[3] Plaintiff's newly asserted claims of sex and color discrimination are separate types of discrimination under Title VII, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. *See* 42 U.S.C. § 2000e, 2000e-2. Sex discrimination violates Title VII's requirement "that persons of like qualifications be given employment opportunities irrespective of their sex." *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971). "Color discrimination," one court has stated, "arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African American individual." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 n. 5 (4th Cir. 2002).

---

[3] Plaintiff could seek to amend her complaint pursuant to Fed. Rules Civ. Proc. 15(a) to add claims of sex and color discrimination under ELCRA. Unlike Title VII, ELCRA does not require an employee to exhaust her administrative remedies as a prerequisite to filing suit. *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1132 (W.D. Mich. 1997).

The court will not expand plaintiff's race discrimination claim to include these additional claims of sex and color discrimination, which plaintiff did not pursue in her EEOC action. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Michigan Department of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001). *See Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (a plaintiff's complaint filed in the district court must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination).

The right-to-sue letter as set forth in the complaint, indicates that plaintiff pursued a race discrimination claim before the EEOC. Where the EEOC issues a right-to-sue letter following an investigation, the charge set forth in the letter limits the scope of the subsequent civil action to relief to discrimination that is reasonably expected to grow out of the charge set forth in the letter. *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006); *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005). "Permitting claims to be brought in court which are outside of the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Cottrill*, 443 F.3d at 634.

Here, the EEOC's right-to-sue letter is limited to a charge of race discrimination. Plaintiff's claim of sex discrimination is not reasonably expected to grow out of this charge. *See, e.g., Hall v. State Farm Insurance Co.*, 18 F. Supp.2d 751, 765 (E.D. Mich. 1998) ("the absence of any mention or even inference of sex discrimination in [plaintiff's] EEOC charge leads to the conclusion that the gender issue does not reasonably grow out of her racial discrimination charge").

Similarly, the court concludes that plaintiff's claim of color discrimination is not reasonably expected to grow from the racial discrimination charge. A claim of color discrimination is a distinct claim under Title VII. *See, e.g., Bryant*, 288 F.3d at 132-33 n. 5 (court did not address plaintiff's claim for color discrimination where the EEOC charge focused on his race and was devoid "of any hint that his particular skin tone motivated the alleged discrimination"). Accordingly, plaintiff's Title VII claims for color discrimination and sex discrimination are not properly before the court.

### C. Plaintiff was replaced by a member of a protected class

The motion before the court hinges on whether plaintiff can satisfy the last element of the *McDonnell Douglas* test. To state a prima facie case of discrimination, plaintiff must show that she was replaced by a member of an unprotected class or treated differently from similarly situated members of the unprotected class. *McDonnell Douglas Corp*, 411 U.S. 792. Plaintiff has failed to meet the first prong of the fourth element of the *McDonnell Douglas* framework, because she was replaced by a member of the protected class. It is undisputed that plaintiff's replacement, Young, is the son of an African-American. The court rejects plaintiff's claim that a light-skinned African-American of "mixed race" heritage is not entitled to protection as a member of this particular protected class (i.e., race).[4] *See, e.g., Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999) (employer violated Title VII when it discharged a white employee allegedly because his child was bi-racial); *Smith v. Mission Associates Ltd. Partnership*, 225 F.Supp.2d 1293, 1299 (D. Kansas 2002) (bi-racial plaintiffs, "being half black and half caucasian" are members of a protected class for purposes of a discrimination claim under Civil Rights Act of 1968); *Jackson v. Katy Independent School District*, 951 F.Supp. 1293, 1302

---

[4] *See* Plaintiff's Response at 17-19.

(S.D. Texas 1996) (bi-racial student, being the son of an African-American male, is a member of a protected class under the Civil Rights Act of 1964). To recognize a legal hierarchy within the protected class of race based upon differences in the hues of skin color would create or deny legal remedies based upon sub-categories of this class that Congress has not chosen to recognize. It could also open the door to nearly insurmountable issues of proof in court regarding the actual racial heritage of a plaintiff and/or a person replacing a plaintiff, not to mention difficulties for everyone in the daily application of the Civil Rights Act.[5] The court finds that Young is a member of plaintiff's protected class. Accordingly, plaintiff has failed to establish that she was replaced by a member of an unprotected class.

### D. Factual issues exist with respect to plaintiff's claim that she was treated differently from members of the unprotected class.

The court concludes, however, that plaintiff has met the second prong of the fourth element needed to establish a prima facie case of discrimination, i.e., that she was treated differently than Christy Tiefenbach and Paula Kienzle, similarly situated members of the unprotected class. *McDonnell Douglas Corp*, 411 U.S. 792. "In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case,

---

[5] Plaintiff suggests the court may take judicial notice of the distinction between the "protected class of Black persons and the class of persons of mixed race," although she offers no authority for this proposition. A judicially noted fact must be one "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201(b). A court is required to take judicial notice only if requested and supplied with the necessary information. FRE 201(d). In this instance, however, plaintiff's invitation "to take judicial notice of the distinction" between her two perceived classes is, in reality, tantamount to an invitation to judicially create the same. There is no basis on this record to find, either as a matter of fact or as a matter of law, that there presently exist two separate racial classes whose parameters are either well known or capable of accurate and ready determination by reference to unimpeachable sources. The invitation is declined.

the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the female employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Insurance Company*, 40 F.3d 796, 802 (6th Cir. 1994). As the Sixth Circuit stated in *Mitchell*:

> [T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (citation omitted).

It is undisputed that both Tiefenbach and Kienzle were store managers, under the supervision of the same area manager (Mark Ziegert) and subject to the same employment policies (the Dollar General Employee Handbook) as plaintiff. Factual questions exist with respect to whether Tiefenbach and Kienzle engaged in the same conduct as plaintiff.

Plaintiff was terminated for "falsifying records," i.e., "chang[ing] employee punches." General Personnel Action Form terminating plaintiff, attached to Ziegert Aff. (1/30/06) as Exh. E. The Dollar General employee handbook lists "Falsifying company documents, including time records" as a violation which may result in termination. Ziegert Aff. (1/30/06) at ¶ 13; Employee Handbook at pp. 35-37, attached to Ziegert Aff. (1/30/06) as Exh. A. Ziegert concluded that that plaintiff falsified records related to the hours worked by an employee, Kerry Krause. Ziegert Aff. (1/30/06) at ¶ 10. Based upon his review of company records, including store work schedules, Krause's clock times and Krause's payroll records, Ziegert concluded that plaintiff had improperly reduced Krause's hours worked in the time keeping system. *Id.* Ziegert explained that:

> My review of the Benton Harbor store schedules, Krause's clock in/out time, and Krause's payroll records showed that [plaintiff] reduced the hours that Krause

9

>was scheduled to work.  These records showed that [plaintiff] did not simply take away or delete hours that Krause was not scheduled to work.

Ziegert Aff. (3/17/06) at ¶ 3.  Ziegert also stated that plaintiff "admitted reducing the hours that Krause reported on the store register."  Ziegert Aff. (1/30/06) at ¶ 12.

However, Ziegert's affidavits do not define the improper conduct that led to plaintiff's termination. Although Ziegert refers to "Krause's payroll records" and a chart indicating that plaintiff modified Krause's payroll record 63 separate times on 18 different days, he fails to explain how plaintiff acted improperly.  *See* Modification Chart of Clock Times for Kerry Krause, attached to Ziegert Aff. (1/30/06) as Exh. C.  Ziegert simply states that plaintiff was terminated for "improper alteration of employee time records."  He does not identify which of the 63 modifications made to Krause's employee time records were "improper." Plaintiff understood that she was fired because she reduced Krause's hours worked and because defendant "didn't want to be involved in anything that might come back on the company."  Moore Dep. at 173.  Plaintiff admitted to Ziegert that she reduced the hours Krause reported on the store register, based upon her observation that Krause was "stealing time."  *Id.* at 115-16. Plaintiff testified that "stealing time" involved an employee "[c]locking in and not starting work until another half hour, hour or so."  *Id.* at 98.  In his affidavit, Ziegert agreed with plaintiff's definition:

>The act of being idle while clocked in is commonly referred to as "stealing time." Ordinarily this occurs when an employer clocks in but does not begin to perform her duties until some time later.

Zeigert Aff. (1/30/06) at ¶ 15.  While Ziegert acknowledges the concept of "stealing time," neither plaintiff's written termination form nor Ziegert's affidavits state that plaintiff was discharged for improper conduct related to Krause "stealing time."  Ziegert does deny that he told plaintiff to engage in corrective action for stolen time:

10

> I never instructed [plaintiff] to enter the timekeeping system and reduce or "correct" the time entered by employees in those instances where an employee is suspected or known to have "stolen time." Nor did I ever inform [plaintiff] that this was an acceptable practice or procedure.

Ziegert Aff. (3/17/06) at ¶ 4.

Plaintiff asserts that Tiefenbach and Kienzle also reduced employee hours but were not terminated for their conduct. In her deposition, plaintiff testified that she observed Tiefenbach take off time from an employee's hours and add them on to the next payroll period. Moore Dep. at 137. Sometimes Tiefenbach would reduce the hours and sometimes Tiefenbach would move the hours to the next payroll period. *Id.* Plaintiff testified that she reported Tiefenbach's activity to Ziegert. *Id.* at 141. Plaintiff also testified that Kienzle taught her to correct employee time by taking off additional time after the store was closed, e.g., if someone punched out at 8:30, Kienzle would change it to 8:00. *Id.* at 143.

In her affidavit, plaintiff stated that she saw Tiefenbach and Kienzle "using improper procedures, such as cutting off employee's time worked after closing." Dannetta Moore Aff. at ¶ 4.

Finally, plaintiff's EEOC charge of discrimination, which was read into the record at her deposition, stated that "[o]n February 11, 2003, I was discharged for falsifying records." Moore Dep. at 200.[6] Plaintiff also stated, "I am aware of two white store managers who manage the stores in Edwardsburg, Michigan [Kienzle] and Coloma, Michigan [Tiefenbach] who have also falsified records and have not been discharged." *Id.* At her deposition, plaintiff stated that the charge of discrimination was "misworded" and that "I never falsified records. I corrected records."

---

[6] The charge of discrimination, identified as deposition exhibit 16, is not part of the record.

11

*Id.* at 200-01. This testimony suggests that plaintiff construed her action as a proper corrective action rather than the falsification of company records.

Ziegert disputes plaintiff's claim, stating that during his employment as area manager, plaintiff "was the only store manager under my supervision who engaged in misconduct involving the improper alteration of employee time records." Ziegert Aff. (1/30/06) at ¶ 5. Ivan Reeves, Dollar General's Director of Employee Relations, echoed Ziegert, stating in an affidavit that plaintiff "was the only store manager in Ziegert's district who engaged in misconduct involving the improper alteration of employee time records." Ivan Reeves Affidavit at ¶¶ 1-2, attached to defendant's Reply as Exh. 4. While Ziegert and Reeves conclude that plaintiff engaged in misconduct, they fail to explain how plaintiff's conduct differed from Tiefenbach's or Kienzle's conduct in altering payroll records.

It is undisputed that plaintiff altered the payroll records by reducing the hours that Krause reported. However, plaintiff has presented evidence that Tiefenbach and Kienzle also altered employee payroll records, by either reducing an employees' hours or moving those hours to a different week's payroll. While plaintiff was fired for her conduct, Tiefenbach and Kienzle retained their jobs. Factual issues exist with respect to (1) whether plaintiff's alterations to Krause's payroll records were improper and (2) whether White employees not fired engaged in the same conduct. Viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff has demonstrated a prima facie case of discrimination.

> **E. Genuine issues of material fact exist with respect to defendant's claim that it had a legitimate, non-discriminatory reason for discharging plaintiff.**

Next, defendant contends that even if plaintiff had presented a prima facie case, she

has presented no evidence that defendant's legitimate, non-discriminatory reason for her discharge is a pretext for a racially motivated decision. Defendant has presented a nondiscriminatory reason for firing plaintiff, i.e., that she falsified records by improperly altering employee time records. Once an employer presents a nondiscriminatory reason for the adverse employment action, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemical Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (analyzing age discrimination claim). This returns the burden of proof to plaintiff to prove discrimination "to a new level of specificity." *Mischer v. Erie Methodist Housing Authority*, 168 Fed Appx. 709, 714 (6th Cir. 2006), *quoting Burdine*, 450 U.S. at 255.

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (internal citation and quotation marks omitted); *Manzer*, 29 F.3d at 1084. In *Manzer*, the Sixth Circuit explained the three methods by which a plaintiff can demonstrate that the employer's proffered reason was a pretext:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity". . . .
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by

13

> showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Manzer*, 29 F.3d at 1084.

As previously discussed, factual issues exist regarding the nature of plaintiff's conduct that resulted in her termination and whether Tiefenbach or Kienzle engaged in the same conduct. These factual issues apply to the first and third methods by which plaintiff can rebut defendant's proffered reasons for her discharge; that is, whether there is a basis in fact to defendant's claim that plaintiff improperly altered Krause's time records and whether Tiefenbach or Kienzle engaged in substantially identical conduct by altering the time records of other employees.  Viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff has provided sufficient evidence from which the jury could reasonably reject defendant's explanation that she was discharged for falsifying records.

### III.  Conclusion

Accordingly, defendant's motion for summary judgment (docket no. 15) will be **DENIED**.  An order consistent with this opinion shall be issued forthwith.


Dated:  September 19, 2006             /s/ Hugh W. Brenneman, Jr.
                                        Hugh W. Brenneman, Jr.
                                        United States Magistrate Judge